| t CALOGERO, Chief Justice,
dissents and assigns reasons.
In my view, there is no value to judicial economy in remanding this case to the trial court for yet another hearing, when this court has before it a sufficient record upon which to decide the issues presented. Given the transcript and record evidence, especially the State’s recent supplement to the record in this court with the bills of information containing the notation that the charges were “dismissed per agreement with the state to testify” against the relator, the conclusion is inescapable that there was a “deal” offered to and accepted by the two State witnesses who were both initially charged with second degree murder along -with the relator. Furthermore, whether the State failed to disclose evidence of the agreement with its witnesses, or whether trial counsel erred in not discovering evidence of the agreement from the available record, the failure to inform the jury of the State’s arrangement with the codefendants requires reversal of the relator’s conviction because it undermines confidence that the adversary system functioned properly in the present case to produce a reliable and just result.
The prosecution may not suppress evidence that is favorable to the accused and material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Knapper, 579 So.2d 956 (La.1991). Favorable evidence includes both exculpatory evidence and impeachment evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Brady also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The evidence is material if there is a reasonable probability, sufficient to undermine confidence in the outcome, that the evidence, if disclosed to the defense, would have changed the outcome of the proceedings or would have created a reasonable doubt that otherwise did not exist. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383; Knapper, 579 So.2d at 959.
Under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 80 L.Ed.2d 674 (1984), adopted by this court in State v. Washington, 491 So.2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes (1) that counsel’s performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel’s inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect.
Here, the relator testified that the eo-defendants-turned-State-witnesses had actually beaten the victim to death after the relator had abandoned the fight. To support his defense, trial counsel attempted to discredit the former co-defendants by insinuating that they had reached an agreement with the State in exchange for their testimony. Other than the testimony of the woman in front of whose home the killing had taken place, and who admitted that, during an earlier bond reduction hearing, she had lied under oath about events surrounding the murder, the State called in rebuttal an assistant district attorney who testified categorically that the State had not made |aany deals with the *559 former co-defendants in exchange for their testimony.[1] Thus, the jury never heard of the arrangement under which the State dismissed the murder charges against the relator’s two co-defendants, who testified that relator had retrieved the bat from the car and had beaten the victim before they were able to intervene. Even then, a divided jury, aware only that the State had dismissed the charges against the two witnesses, but unaware of the quid pro quo nature of that action, engaged in lengthy deliberations before voting to convict by a ten-two margin.
Under these circumstances, and whatever the cause, the failure to bring before the jury information regarding the State’s arrangement with its witnesses mandates reversal of the conviction, because it undermines confidence that our adversary system functioned properly in the present case to produce a reliable and fair result.

. The witness testified that she saw relator swing a bat at the victim while the co-defendants held the victim down. However, she also admitted that she had lied to police about the presence of other people in her home at the time of the killing.